The next case is 21-1629 Deutsche Bank National Trust Company v. Lisa M. Wilson et al. May it please the court, Crystal Tedessa on behalf of the plaintiff appellant Deutsche Bank as trustee. May I please reserve two minutes for rebuttal? Yes, you may. Thank you. It's the position of the plaintiff that the district court erred in granting summary judgment in favor of the defendants in this matter, where it based its decision on finding that the mortgage for which the right of redemption under the Rhode Island tax sale statute had been foreclosed, finding that the mortgage was unenforceable and had been extinguished, and also erred in finding that there were no issues of material fact as to the equitable claims. Your pleadings below had somewhat of an imaginative smorgasbord of claims that may have distracted some of the district court. What precise claims are you focusing on now on appeal that you say should not have been thrown out? Are you limiting your appeal to the breach of contract claim? Your Honor, the appeal is limited to the breach of contract claim against Ms. Wilson, which was count one, and counts three, which was constructive trust, four, equitable lien, breach of contract, versus Mr. Wilson on the note, count five, and count six, unjust enrichment. We're not proceeding with the claim in count two, which was a declaratory judgment, that there was an effective redemption because of the transfer. Are you pursuing any claims against the decedent? No, not at this point. So it's limited to your claims against Ms. Wilson, one, three, four, and was it five? Six, Your Honor. Thank you. We moved for summary judgment below on only the breach of contract claim against Ms. Wilson, and I do want to note that below Ms. Wilson did not oppose plaintiff's statement of undisputed material facts at the summary judgment stage. She did not put in any opposition to that. She did oppose the motion itself, but all of the facts that were set forth we would submit should be accepted as true for the purposes of considering our motion for summary judgment. The District Court, we believe, erred in relying on New York law and not considering Doven Mule, which is a Rhode Island Supreme Court case and is instructive on the issue of the continued enforceability of a mortgage after the right of redemption is foreclosed. Why do you think it's so clear? In that case, there was a signed note and the suit was about the note, but Ms. Wilson never signed the note. Only Mr. Wilson did, and you've just said you're not pursuing claims against his estate. Yes, Your Honor. So? So we believe that Doven Mule is instructive because while it was an action to enforce the promissory note against the borrower, the plaintiff in that action, Doven Mule, was an assignee of the mortgage after the right of redemption was foreclosed. So in that matter, the original lender, Citizens Bank, assigned the mortgage to Doven Mule after the mortgage was foreclosed through the tax sale process, and it was then considered on appeal whether it was appropriate to consider whether there was any duty to mitigate where the mortgage stated that there was no duty to mitigate. I'm sorry. How does that help you? I know your mortgage has no duty to mitigate, but under the Rhode Island statute, all legal and equitable title, your client lost because of the tax sale and foreclosure and the superior court judgment. So we have a superior court judgment that says your client has no legal or equitable title arising from the mortgage. Had you gotten her signature on the note, I think you would have been in a different situation, but you did not. And so you're going to have to help me as to why you have any remaining legal claim or a claim based in equity, and several of your counts are based in equity. Yes, Your Honor. The right of redemption was foreclosed. We don't dispute that. We admit that obviously the tax title was absolute after that right of redemption. No, no, no. It went beyond that. You have a superior court judgment that extinguished your client's legal and equitable rights in the mortgage, and yet you are here suing on the mortgage. Your Honor, we take the position that that's as to the mortgage's status securing the lien against the property. It's not as to the mortgage as a separate contract between these two private parties. If that happened, then in Dovenmule, the assignment would have been ineffective to transfer anything to the ASINI, Dovenmule in that matter, because it would have ceased to exist. And that that was not the issue in Dovenmule? No, but the Rhode Island Supreme Court acknowledged the plaintiff in that matter as the ASINI of the mortgage and determined the rights under the mortgage as applied to that plaintiff because of the assignment, which happened after the right of redemption was foreclosed. But no argument was made to them of the type you're making to us? No, it was a different situation. Yes, we admit that it's a different situation in that Ms. Wilson is not a signatory on the note in this matter, but there's no basis in Rhode Island law to conclude that the mortgage completely ceases to exist as a contract and that all of those other covenants, particularly where paragraph 16 of the mortgage sets forth that if any provision or clause of the mortgage is determined to be unenforceable or at odds with applicable law, that the remainder of the mortgage would still survive. Let me make sure I'm understanding your breach of contract claim. The contract in question is the mortgage? Yes. And she signed the mortgage? Yes. And the mortgage had a commitment by her that she would pay the taxes so that the mortgage wouldn't be lost by a foreclosure for failure to pay taxes. And you're alleging she failed to pay the taxes, didn't tell you about it, and hence you lost your mortgage? Yes. That's the breach of contract claim? Yes, that she failed to fulfill the covenants in the mortgage. And I would also note that the bulk of those covenants and what we're claiming here all arose before the petition was foreclosed. So I understand that claim. What I don't understand is your equitable claims. Yes, Your Honor. So we have the constructive trust claim, and it's our position that as Duncan, as the current holder of title to the property, has an equitable duty to either convey the property subject to the mortgage because Ms. Wilson is now the owner of Duncan. She owns all of the shares. So she is, in effect, the owner of the property at this point because of the trust that owns the property. And then – Well, if you didn't have a breach of contract claim, how would you have an equitable claim here? And if you do have a breach of contract claim, wouldn't that provide the remedy and preclude an equitable claim? Yes, Your Honor. It's plated in the alternative. But it seems under either alternative it disappears. If you win the contract claim, it disappears. If you lose the contract claim, it disappears. So I'm wondering what it's doing. Well, if we lose, we think that – I guess it depends on the grounds, right, on the loss. But there's still a question of the equities and how they would tip in this matter, which I think there was a determination below that there really were not any equities, and that's certainly what the defendants have argued, that there aren't any equities here in favor of my client, essentially because, you know, we did not pay the taxes, even though there was no duty to do so, that essentially, like, we're at fault. And so we should not receive the property. And Ms. Wilson, who was responsible, should receive the property free and clear of the mortgage. And the other equitable claim, just briefly, is equitable to a lien, and it's a similar argument. And, again, we were submitting that none of the equities were considered, none of the facts were considered below as being in dispute. Everything, you know, viewed most favorable to us because we did not move for summary judgment on the equitable claims. That was Defendant Duncan's motion for summary judgment, and Ms. Wilson joined in. But it's our position that the court didn't consider any of the equities in our favor or any of the facts. Are you still pursuing the claim for the taxes that your client paid? Yes, Your Honor, the unjust enrichment claim. But the property at the time that those taxes were paid belonged to Birdsong, didn't it? Yes, it did. But Ms. Wilson was, of course, still living in the property at that time and received the benefit. She's continuously lived in the property, as we understand, and so she's received the benefit of, you know, the payment of those taxes and then the insurance proceeds. But that presumes that if the taxes hadn't been paid, there would have been some proceeding brought by the town at when? Well, I mean, the taxes were due and payable. At some point, those taxes would have had to be paid. And whether it happened during Birdsong's ownership or thereafter, they were still to the benefit because it could have been sold at a subsequent tax sale to another third party had those taxes not been paid. I'll reserve the remainder for rebuttal, if that's fine. Thank you. You've reserved two minutes for rebuttal. Thank you. Excuse me. Good morning. I'm Paul DeMarco. I represent Lisa Wilson. If it pleases the Court, I think it would be helpful if I did a quick review of the facts in this matter. I think they're important. And then I would be prepared to address the counts of the appellant in their complaint. This loan goes back to 2006. It was a loan made by the appellant to Mason Wilson III. As the Court points out, Lisa Wilson did not sign the promissory note. She did execute the mortgage whereby they pledged their property in Coventry, Rhode Island, as security for payment of the note. We learned in a deposition that was taken of the appellant's representative that the loan was troubled from day one. The Wilsons weren't paying the taxes. They weren't paying the insurance. Their mortgage payments were delinquent or not made at all. So these were really events of the fall right from the get-go. And they were also a breach of the mortgage covenants. And Deutsche Bank had a right to foreclose at that time. They chose not to. So we move forward to 2014. There was a tax sale scheduled by the fire district in Coventry for nonpayment of fire district taxes. There is no dispute that both the Wilsons and the appellant had notice of this sale. Neither made a payment. The property went to auction for a $700 debt. The third party did purchase the property at the auction. So under the law in Rhode Island, the mortgage holder as well as the owners have one year to redeem that property directly from the taxing authority. However, neither the Wilsons nor the appellant did that. When the one-year period expired, the tax sale purchaser filed a petition in Superior Court to foreclose the rights of the Wilsons and the appellant to redeem the property. There is no dispute that the Wilsons and the appellants were served with that petition. There is no dispute that neither the Wilsons nor the appellant filed an answer, an objection, or an offer to redeem the property at that time. Counsel, if I've understood this correctly, the arguments that Deutsche Bank is now making to us could have been made to the Superior Court in that foreclosure. I'm sorry, the declaration of rights following the foreclosure. Is that correct? If I understand your question, Your Honor, they did not do anything. Yes, I know they did not do anything. But they had notice and they did have the opportunity to do something. Absolutely. And at that point, they could have made arguments of the type that they're now making that certain obligations on the mortgage survive no matter what. Yes, Your Honor, that's correct. After the year expired, the redemption period expired, the tax sale purchaser foreclosed the rights of the parties, and that was a final order. Shortly thereafter, that new owner moved to evict the Wilsons from the property, and that is when the Mason III's parents intervened to save the property. They negotiated with the new owner. We're familiar with the facts. I want to come back to the breach of contract. Let me come back to the breach of contract claim. So I'll move to the count, Your Honor. Count one. And let me ask you to pause for a second here so I get a question in, okay? As you've just spelled out, a failure to pay taxes can end up, if not remedied, wiping out a mortgage. That's what happened here. So lenders routinely include in mortgages a promise from the borrower that the borrower will pay the taxes so this doesn't happen. That's correct. Your client breached that promise and didn't pay the taxes. That's correct, Your Honor. She breached the contract. And as a result, just the thing that this was designed to avoid happened. The mortgage got wiped out. The property got taken. That's correct. Common sense might suggest that the bank should have done something about it rather than just sitting there, but as I understand Rhode Island law, there is no duty to mitigate by the lender in these circumstances. Well, Your Honor, the bank completely slept on their rights. That case of Dover Mule does not help the appellate. That case was limited to a claim by the borrower. They were trying to – So are you saying there is a duty to mitigate that the lender has, that the mortgagee has? No, there's no duty to mitigate. However, in that case, if you don't mitigate, if you don't pay the taxes, you run the risk of losing your security interest, which is exactly what they did. So what's the remedy? Well, in Dover Mule they sued under the – So on the mortgage, what's the remedy? If there's a default – You foreclose. You take the property back before it gets lost to a tax sale purchaser. And the mortgage was in default back in 2007, and they never exercised their rights. But that's a strong argument if there's some type of equitable defense or if there's a duty to mitigate, certainly. But if everybody agrees that under Rhode Island law, the mortgagee has no duty to mitigate when the mortgagor breaches an undertaking in the mortgage and you have an undisputed breach of an undertaking in the mortgage that causes precisely the harm that that undertaking is intended to guard against, it would seem very hard then if there would be no action for breach of contract, breach of that undertaking, and the damages caused by it, which is the wiping out of the security interest. They could still sue under the note. The sums due under the note – But the undertaking that we're talking about, the promise to pay taxes was in the mortgage that your client signed. Your Honor, the mortgage was extinguished when the – Sure, that was just the thing that was – the undertaking was there for the precise purpose of avoiding that result. That was the damage that it caused. Or was it? There was a duty to mitigate, and on her part, no duty on the part of the bank. But then it goes to foreclosure, and I'm not certain whether the no duty to mitigate on the part of the bank means that when they get notice of the superior court proceeding, that at that point they are excused from appearing by Rhode Island law because of the private mortgage agreement that says they have no duty to mitigate. It's an interesting question as to what the duty to mitigate or the absence of the duty to mitigate involves. Well, Your Honor, they had noticed that their security was at risk by virtue of the tax sale and the action brought in superior court. So they had to know as a lender that if they didn't take any action at that time, they could lose their interest in the property. That's undisputed. The question is, it's clear this is a bank that slept on its rights and slept like Rip Van Winkle on its rights. But so what under Rhode Island law? If they didn't have a duty to mitigate, as I understand it, they could stand by and watch your client destroy their security interest and then claim breach of contract, even though they could have stepped in and reduced the damages by paying the $700 themselves. But the contract they seek relief under doesn't exist anymore. The mortgage has been extinguished. Well, sure. That was the harm. That's the precise harm that they're seeking a remedy for, their loss of their security interest. And they've, as you said, Your Honor, they've slept like Rip Van Winkle on those rights. Right. And they don't have any equitable claim because they don't come before this court. Before you get to the equitable, so is your point that, I mean, I suppose it's possible that the covenants that were breached, there could be covenants in the mortgage that were collateral to maintaining, preserving the validity of the security interest itself, the security instrument. But covenants that go to that preservation are gone once the mortgage itself is extinguished. Is that your point? Yes, it is, Your Honor. Is there any law either way on that? Well, it's certainly not Dover Mill because in Dover Mill they weren't, the court didn't address whether mortgage covenants survived a tax sale foreclosure. All Dover Mill said was that the maker of the note was responsible for payments of the note and they couldn't reduce that amount because the bank didn't mitigate and pay the taxes. That's all that stood for. But you're not, it doesn't help you to say that the covenants and the security interest and the mortgagee's rights and the property all disappeared. The question here is at the time that your client failed to pay the taxes, there was a mortgage, that was a breach, and then the only question is what remedy. You have to then argue that somehow the subsequent foreclosure sale not only ended the security interest and the interest in the property, but retroactively eliminated any cause of action for a breach that took place when the property security interest did exist. No, Your Honor, I think they did have a cause of action when the breach was made. They could have foreclosed on the property. But they could have sued for damages, for breach of contract. But not after the contract has been extinguished. If the breach occurred before extinguishing? Well, I don't know what their remedy would be, Your Honor. How would they, what would my client do to cure that breach? Would pay the expectancy damages that the clause was intended to prevent. Well, my client, of course, is not capable of doing that. But our point is they, when the breach was made, they didn't mitigate. They slept on those rights, and they allowed the property and all their rights in the property to be extinguished by the tax bill proceeding. I may view this a little differently, but I thought the extinguishing of the title was pursuant to a Rhode Island statute, which was meant to serve the interests of Repose. And whether, I suppose if the language were crafted, there might be an argument that you could get beyond the legislature's intent as to a preexisting debt and say that survives any extinguishment. But other than the no duty to mitigate language, I don't see such language in this contract. So I'm kind of back to my state statute, state policy versus private contractual language. Your Honor, my understanding of the statute is that the only way to set aside the decree is for lack of notice. And it's an undisputed fact that all the parties had notice of both the sale and the Superior Court action. Thank you, Mr. DeMarco. Thank you. Notice is the exception. Good morning, Your Honors. My name is Patricia Buckley for Defendant Duncan Engineering Solutions, LLC. And with me today is Attorney Thomas Cronin, who's co-counsel. Duncan is in a very odd position, and I wish I'd thought, Judge Chiara, of your description of the smorgasbord of claims here. It's been a difficult path to navigate, and Duncan was originally brought in on arguments of effective redemption, which Judge McConnell soundly rejected. And now those claims have been jettisoned on appeal, so we're not dealing with that. The only thing left relative to Duncan, which is the owner of the property, is the equitable claims of constructive trust and equitable lien, which would have the same effect here if Duncan were ordered to turn this property over to the bank, as would the effective redemption argument. And, in fact, Judge McConnell called that redemptive remedies through equitable claims. And it would leave, as Judge Lynch observed, and as is antithetical to the Rhode Island statute, the titles to these tax properties in limbo. Not just for the tax purchasers, by the way, but for people down the trail, because Duncan bought this property from the tax title purchasers. They didn't buy it from the tax sale. That was bought by an uninterested third party. We then bought from them. So we're talking about attacking titles down the line of these things. And there's really, as it's been argued by the bank, there's really no end to that if we go down this rabbit hole that they've been pursuing. But wasn't the tax sale purchase was arm's length? Yes. Birdsong, anyone else could have bought it, including the bank, just by outbidding Birdsong? Of course. And then is there any evidence that the transaction between Birdsong and Duncan was also not at arm's length? I'm sorry, was also at arm's length? Why? It was an arm's length transaction. Right. And the bank could have outbid Duncan in buying from Birdsong. Well, and the bank was engaged shortly before the purchase by Duncan, was engaged with counsel for Birdsong in discussions about buying it, now very widely spaced and ineffective communications, but offered $20,000 for the property at one point and then disappeared for months, came back, and the attorney for Birdsong said, if you want to do something with this, we're going to have to do it quickly because they were at that point getting the eviction action ready and that was going to mean more money to them, so if we're going to dump it, we've got to dump it soon, and then disappeared. And that enabled, because the eviction was ultimately brought, that enabled Duncan to then come in and say, we're going to buy it, we'll buy it. They bought it for $75,000. So absolutely the bank had all kinds of opportunities available to it to save itself from itself and it failed every single time. It's a graduate course in what not to do if you're a bank. And now they're arguing with respect to Duncan, which is in, like I said, a very odd place, that they have equitable remedies here for constructive trust, for equitable lien, even though there is not a single equity that they can point to. Not one that argues in their favor here. And I understand the mitigation issue. I understand they didn't have a duty to mitigate, but that is somewhat different than the equitable responsibilities that they had if they are going to raise equitable claims, which they've done here. And what they did is just ignore this. They ignored it from the get-go. They made a bad loan initially. The upper end on this variable rate loan was 16-point-something. Well, at base, aren't they really saying that anyone else could have bought it from Birdsong and they obviously could do nothing about it, but for some reason, Duncan couldn't, in a competitive market, outbid them and buy it from Birdsong? Yes. Have they cited any support at all for that? No. And when you get down to the nitty-gritty of the equitable claims, what you find is that there are no equities that argue in favor of the bank. It's not even close. And under Rhode Island law, this is a drastic remedy, the equitable remedies that have to be applied, only if you must find equities in favor of the person asserting the equities. You can't find any here. It's astonishing to me how time after time after time they were their own worst enemy. And because of that, there are no equities to find against Duncan here. Duncan is a legitimate holder of this property. It has always been a legitimate holder of this property. The fact that three people died in the course of this case so that it ended up in the hands of Lisa Wilson, as Judge McConnell observed, was a horrible coincidence, but it's not an equity that argues against Duncan's ownership of it. Thank you, Ms. Buckley. Thank you. Unless there are questions, I think Ms. Tedessa has reserved a minute. Two minutes, sorry. Thank you, Your Honors. Just briefly, I want to note that Lisa Wilson covenanted to pay the taxes to defend title to ensure that there was not a superior lien on the property. There is no dispute here that she made those agreements in the mortgage. But the mortgage has a provision, what happens in the case of default. It has a section labeled remedies, and it has precise obligations that the lender has to follow. But you're saying it doesn't have to follow them. Well, we would state with respect to foreclosure, Your Honor. Well, it says you can accelerate the debt. I don't think it says note. I think it says debt. And it says you can proceed to foreclosure. But it doesn't list anything else in terms of remedies. So what's the argument in the law for the other remedies that you would ordinarily have in terms of when there's a breach of contract, surviving the extinguishment of the document? Yes, Your Honor. Well, we don't have any Rhode Island law in point. But in our brief, at footnote two, we did cite to Bayer v. Clements, which is an 1839 Massachusetts case, you know, that essentially stands for the proposition that when there is an issue such as this and essentially title is wiped out, that there is still a remedy against the mortgagee separate from any title action. And that's essentially what we're arguing here, that the covenants are triggered by the loss of the security lien and that, like any other contract, you know, we concede, obviously, that there is not a clear path in terms of damages or what's to be considered necessarily when this happens. But it certainly seems at odds with contract to conclude that what happened here, where Lisa Wilson unequivocally breaches her obligations under the mortgage and is now the owner of the property, there's no recourse at all against her in this situation. Thank you. Thank you. That concludes argument in this case.